**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

JOSEPH D. FLEMING,

Plaintiff,

vs.

JO ANNE B. BARNHART, Commissioner of Social Security,

Defendant.

_______________________________/

No. CIV S-05-0185-CMK

MEMORANDUM OPINION AND ORDER

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the consent of the parties, this case is before the undersigned for final decision on plaintiff's motion for summary judgment (Doc. 18) and defendant's cross-motion for summary judgment (Doc. 19).

/ / /

/ / /

/ / /

/ / /

## I. BACKGROUND

Plaintiff applied for disability insurance benefits on January 30, 2003, based on disability. In his application, plaintiff claims that his impairment began on January 1, 2001. Plaintiff claims his disability is caused by chronic fatigue syndrome ("CFS"). Plaintiff is a United States citizen born January 3, 1955, with a high school education.

Plaintiff's claim was initially denied. Following denial of his request for reconsideration, plaintiff requested an administrative hearing, which was held on August 3, 2004, before Administrative Law Judge ("ALJ") Antonio Acevedo-Torres.

In his August 19, 2004, decision, the ALJ made the following findings:

> 1. The claimant met the disability insured status requirements of the Act on January 1, 2001, the date the claimant stated he became unable to work, and continues to meet then through Marsh 31, 2003;
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2001;
>
> 3. The medical evidence establishes that the claimant has severe chronic fatigue syndrome, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in [the Listings of Impairments];
>
> 4. The claimant's testimony cannot be entirely credited with regard to his stated limitations in sitting, standing, walking, lifting and the need to lie down continually or otherwise regarding his stated inability to perform at least a full range of "light work, for the above-stated reasons;
>
> 5. The claimant has the residual functional capacity to perform work-related activities except for work involving lifting and carrying more than 25 pounds frequently or 50 pounds occasionally;
>
> 6. The claimant's past relevant work as a delicatessen worker and sawyer did not require the performance of work-related activities precluded by the above limitation(s);
>
> 7. The claimant's impairment does not prevent the claimant from performing his past relevant work; and
>
> 8. The claimant was not under a disability as defined in the Social Security Act, at any time through the date of the decision.

/ / /

Based on these findings, the ALJ concluded that plaintiff was not disabled and, therefore, not entitled to benefits. After the Appeals Council declined review on December 2, 2004, this appeal followed.

**II. STANDARD OF REVIEW**

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/ / /

/ / /

/ / /

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to follow Social Security Ruling ("SSR") 99-2p – which governs in cases involving CFS – in evaluating plaintiff's limitations; and (2) the ALJ improperly evaluated plaintiff's ability to perform past relevant work.

### A. Social Security Ruling 99-2p

Plaintiff contends the ALJ erred in three ways regarding application of SSR 99-2p. First, plaintiff argues the ALJ ". . . violated SSR 99-2p by failing to recontact Dr. Herman, as plaintiff's treating physician, for clarification of plaintiff's [residual functional capacity]." Second, plaintiff argues the ALJ failed to properly assess his credibility. Third, plaintiff argues the ALJ failed to consider third-party statements.

#### 1. Recontacting Treating Physician

In relevant part, SSR 99-2p provides:

> . . . If the adjudicator finds that the evidence is inadequate to determine whether the individual is disabled, he or she must first recontact the individual's treating or other medical source(s) to determine whether the additional information needed is readily available, in accordance with 20 CFR 404.1512 and 416.912. Only after the adjudicator determines that the information needed is not readily available from the individual's health care provider(s), or that the necessary information or clarification cannot be sought from the individual's health care provider(s), should the adjudicator proceed to arrange for a consultative examination(s) in accordance with 20 CFR 404.1519a and 416.919a. The type of consultative examination(s) purchased will depend on the nature of the individual's symptoms and the extent of the evidence already in the case record.

Plaintiff argues that, under this ruling, the ALJ should have recontacted his treating physician rather than obtaining and relying on the opinions of consultative examiners.

By the plain language of SSR 99-2p, the ALJ's duty to recontact plaintiff's treating physician would only be triggered if he made a finding that the evidence was inadequate to determine disability. Having carefully reviewed the ALJ's decision in this case, the court cannot locate any finding that the evidence was inadequate. To the contrary, the ALJ quite

clearly found that disability could not be established on the medical evidence alone. Instead of being inadequate to determine the question, the ALJ found the medical evidence adequate to reach a concrete determination. The ALJ next evaluated the impact of non-medical evidence on plaintiff's ability to perform work. As with the medical evidence, the ALJ found that the non-medical evidence was adequate to reach the determination that plaintiff was not disabled because he could still perform work-related activities. Because the ALJ never made a finding that the evidence was inadequate to reach a decision, the recontacting provision of SSR 99-2p was never triggered.

It appears that plaintiff may be challenging the weight the ALJ gave to the opinion of his treating physician. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be

rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

As to plaintiff's treating physician, the ALJ stated:

> With regards to Dr. Herman's opinion that the claimant is totally disabled, it is noted that the statement was provided after the claimant had only been seen on 2 occasions, i.e., the initial examination in December 2002 and a follow-up examination in January 2003. In any event, the ultimate conclusion as to whether or not an individual is disabled is to be decided by the undersigned – not by any medical source – treating or otherwise.

The ALJ went on to find that Dr. Herman's opinion was not supported by the objective medical and non-medical evidence in the record, specifically the opinions of consultative examiners that plaintiff could perform work-related activities with few limitations. Because there is substantial evidence in the record to support the ALJ's conclusion as to Dr. Herman, and given that Dr. Herman's opinion was based on very limited contact with plaintiff, the court finds that the ALJ properly rejected Dr. Herman's conclusion.

2. Plaintiff's Credibility

Next, plaintiff argues the ALJ improperly evaluated his credibility. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper

reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See id. at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted).

In CFS cases, SSR 99-2p provides further guidance, in relevant part, as follows:

> . . . In accordance with SSR 96-7p, if the existence of a medically determinable impairment that could reasonably be expected to produce the symptoms has been established . . . but an individual's statements about the intensity, persistence, or functionally limiting effects of symptoms are not substantiated by objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms. The adjudicator must then make a finding on the credibility of the individual's statements about symptoms and their functional effects. When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements.

SSR 99-2p provides that such information includes "[t]the individual's own record (such as a diary, journal, or notes) of his or her own impairment(s) and its impact on function over time."

With respect to the requirements of SSR 99-2p, plaintiff argues that, while he provided a 51-page diary detailing his symptoms and their effects on his functioning, the ALJ made no reference to it in evaluating plaintiff's credibility, presumably in violation of the requirement that the ALJ ". . . consider all of the evidence in the case record, including any statements by the individual . . ." Given that plaintiff's diary of daily symptoms was included in the administrative record before the ALJ, and given that the ALJ stated that he considered "pertinent non-medical evidence such as routine daily activities, observations and impressions by treating and examining sources, medication used and any side effects, and all other relevant information of record," the court cannot say that the ALJ failed to consider plaintiff's diary.

With respect to the more general requirements for assessing credibility, plaintiff argues that the reasons relied on by the ALJ to reject his credibility were not clear and convincing. The court does not agree. After setting forth a detailed summary of plaintiff's hearing testimony regarding his symptoms and functioning, the ALJ stated:

> . . . Further, despite the claimant's complaints of chronic fatigue none of the examining medical sources found any significant signs of fatigable weakness . . . In any event, proper medical source statements have been provided by the examining and reviewing medical sources, whose conclusions were that the claimant remains unlimited in his capacity for basic work except that he is limited to 20 pounds of frequent and 40 pounds of occasional lifting and carrying. This assessment is well-supported by the objective medical evidence as well as by the claimant's fairly wide-ranging daily activities, which include riding a bicycle, doing his own shopping and housework, meal preparation and otherwise handling an independent lifestyle. The claimant's testimony that he could only stand 10 to 15 minutes at a time, lift only a few pounds repeatedly throughout a normal day, or that he otherwise cannot perform the work-related activities required for at least a full range of "light" work, cannot be credited for the above-stated reasons.

The court concludes that these are clear and convincing reasons for finding the plaintiff not credible.

/ / /

3. Third-Party Statements

Plaintiff argues that the ALJ failed to consider third-party statements, as required under SSR 99-2p, in evaluating his credibility. Plaintiff's argument, in its entirety, is as follows:

> There are two letters from two former employers verifying plaintiff's honesty, work ethic, and his diminished physical status.
>
> Again, the ALJ made no reference to these letters and there is no indication in the decision that the ALJ even considered these statements in analyzing plaintiff's credibility and the merits of his claims, in violation of SSR 99-2p.

As with plaintiff's contention that the ALJ failed to consider his 51-page diary, the court rejects plaintiff's argument that the ALJ failed to consider the two letters from former employers.

Moreover, the two letters in question would only have been relevant under SSR 99-2p to show plaintiff's ". . . ability to function on a day-to-day basis and to depict the individual's capacities over a period of time." SSR 99-2p. One letter states:

> Knowing a little bit of his current physical situation, I know that if he were able to work, or be of benefit to society, and God, he would be working right now.

The other letter states:

> I have been a social friend of Joseph's the past few years and visit with him every few months. I have been saddened by the decline in his health. Instead of the very healthy ambitious worker he was, I have seen Joseph turn into a tall weakened middle aged man.
>
> We talk on the phone frequently and I know how much he would like to put his superb mind and formerly strong body to work. The Joseph Fleming of the past few years is really only a shadow of the man that ran his own lumber business a few years ago. I pray that modern medical efforts will be able to bring back his health.

Neither of these testimonials is evidence of plaintiff's day-to-day functioning. As to plaintiff's capacities over time, the letters only generally describe a trend of ill health and do not depict any of plaintiff's actual capacities or limitations.

/ / /

/ / /

**B. Past Relevant Work**

Plaintiff argues the ALJ failed to " . . . undertake a complete description of the past relevant work, both as performed and as it is generally performed in the national economy, and include information about the strength, endurance, mental demands, and other job requirements and compare these demands specifically to plaintiff's residual functional capacities from both a physical and mental standpoint." Plaintiff states that the ALJ was required to set out a complete description of plaintiff's past relevant work, both as actually performed by plaintiff and as generally performed in the national economy. According to plaintiff, this description must include information about the strength, endurance, mental demands, and other job requirements. Plaintiff contends the ALJ erred in relying on the Dictionary of Occupational Titles ("DOT") for his determination.

At the outset, the court notes that plaintiff's past relevant work included positions as a delicatessen worker and as a sawyer. Part of plaintiff's argument is that the ALJ only conducted an analysis for the delicatessen job and did not discuss the sawyer job at all. At this stage of the sequential analysis, the question is whether the plaintiff can perform any of his past relevant work. Logically, if he can perform either the delicatessen job or the sawyer job, the answer to this question would be "yes." Therefore, because the ALJ concluded that plaintiff could perform his past relevant work as a delicatessen worker, there would be no need to address the sawyer job. Plaintiff cites no authority for the position that the ALJ was required to analyze all of his past jobs.

As to plaintiff's assertion that the ALJ was required to analyze plaintiff's past relevant work, both as actually performed by him and as generally performed in the national economy, the court cannot agree. Under 20 C.F.R. § 404.1560, a claimant is capable of performing past relevant work if the claimant's residual functional capacity permits the claimant to meet the demands of previous work, either as actually performed or as generally performed in the national economy. By the plain language of this regulation, the ALJ is required to analyze

one or the other, but not both.

Finally, plaintiff challenges the ALJ's reliance on the DOT to determine that plaintiff's residual functional capacity allowed him to perform his past relevant work as a delicatessen worker, as that job is generally performed in the national economy. Because the regulations specifically allow use of the DOT, and because plaintiff has cited no authority to the contrary, the court concludes that reliance on the DOT was appropriate. See id.

**IV. CONCLUSION**

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is denied;
2. Defendant's cross-motion for summary judgment is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: June 2, 2006.

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE